UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE CAKEBREAD, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BERKELEY MILLWORK AND FURNITURE CO., INC.,<br><br>Defendant. | Case No. 16-cv-00083-RS   (DMR)<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR SANCTIONS FOR BREACH OF PROFESSIONAL RESPONSIBILITIES**<br><br>Re: Dkt. No. 39 |

Plaintiffs Jill Cakebread and Steve Cakebread ("Plaintiffs") filed a Motion for Sanctions for Breach of Professional Responsibilities against Defendant Berkeley Millwork and Furniture Co., Inc. ("Defendant") and its attorney, Melvin D. Honowitz, Esq. [Docket No. 39]. The court held a hearing on October 27, 2016. For the following reasons, Plaintiffs' motion is **DENIED**.

## I.   FACTS & PROCEDURAL HISTORY

Plaintiffs entered into an agreement with Defendant to design and build custom furniture and cabinetry for Plaintiffs' home in Wyoming. [Docket No. 1 (Compl.), ¶¶ 10-12]. Plaintiffs contend that they cancelled their order before Defendant began any work, which entitled them to a refund of their partial payment under the terms of the agreement. [*Id.*, ¶¶ 14-15]. Defendant denies these allegations, and counterclaims that Plaintiffs breached the agreement by failing to return copies of Defendant's designs and using Defendant's designs in building certain furniture in their home. [Docket No. 8 (Answer and Counterclaim), at pp. 7-11].

Plaintiffs now move for sanctions. They assert that Honowitz breached his ethical duties when he contacted Pamela Renner, the real estate broker who is handling the listing of Plaintiffs' Wyoming property. Specifically, Plaintiffs contend that Honowitz acted unethically by misleading Renner into believing that he represented a potential buyer in order to acquire pictures and plans for use in this case.

The court now sets out the relevant facts, making note of the slight variations between

Honowitz's and Renner's accounts. According to Honowitz, he had been following the online public auction of Plaintiffs' Wyoming ranch property, which includes the home at issue in this case. He emailed Caitlin Keys, the Marketing Director for Concierge Auctions, the website that listed Plaintiffs' property. His email inquired about the status of the auction. Keys responded, stating that the auction was not going forward and that Plaintiffs' property was currently listed with the Jackson Hole Sotheby's office. Keys volunteered to put Honowitz in touch with Pamela Renner, who was Plaintiffs' real estate broker. Honowitz responded: "Please make the contact for me. I have a client who has an interest." Honowitz Decl., ¶ 5 and Ex. 3. Keys put Honowitz in touch with Renner, who emailed Honowitz that she would "love to talk to [him] about the Cakebread Ranch." Honowitz Decl., ¶¶ 6-7 and Exs. 4-5. Honowitz then telephoned Ms. Renner.

According to Renner, her call with Honowitz lasted approximately 21 minutes. During the call, Honowitz told her that he "was working with a confidential buyer who was very interested in knowing more about [Plaintiffs'] home, in part as a place to go fishing, as the property is near several waterways." Renner Decl. at 2. In response to Renner's question about the buyer's ability to pay for the home, Honowitz assured her that the buyer was more than qualified. Renner understood from these statements that the buyer represented by Honowitz had an interest in purchasing Plaintiffs' property. Honowitz asked Renner for "anything and everything [she] could send about [Plaintiffs'] property," and specifically requested "as-built drawings." *Id*. Renner thought that Honowitz's request was odd, and told him that she would not send any inventories or as-built drawings. Renner did, however, send Honowitz other materials including photographs of Plaintiffs' property and its waterways, as well as basic information about the property. Had Renner known that Honowitz was an attorney representing someone suing her clients, Renner declares that she would not have discussed the details of Plaintiffs' property without Plaintiffs' authorization or a court order.

According to Honowitz, he introduced himself to Renner as a San Francisco attorney who "had a client interested in [Plaintiffs'] ranch." Honowitz Decl., ¶ 9. When asked by Renner, Honowitz did not disclose the identity of his client, but confirmed that his client was qualified to purchase the property. During the course of the call, Honowitz engaged in general conversation

2

with Renner about Plaintiffs' ranch and Wagyu cattle.  Renner asked Honowitz whether his client wanted to operate Plaintiff's ranch, and Honowitz responded that he did not believe so, but that his client "might be interested in fishing."  Honowitz Decl., ¶ 14.

Honowitz admits that he asked Renner for a variety of materials, including copies of the plans, specifications, and as-built drawings, as well as specifics about who built the cabinetry in Plaintiffs' home.  Renner sent Honowitz pictures and printed literature about Plaintiffs' home, but was unwilling to release the plans and drawings absent Honowitz's client's willingness to make an offer.  As far as Honowitz could tell, the pictures and materials sent by Renner were duplicates of what had already been provided by Plaintiffs in discovery or what Honowitz was able to access online.

Plaintiffs' counsel subsequently learned of Honowitz's call to Renner and sent him a letter, asserting that Honowitz had violated his ethical duties as an attorney by misrepresenting the identity of his client to Renner in an attempt to obtain unauthorized discovery.  Honowitz responded by confirming his call with Renner, but otherwise disputing the assertion that he had violated his ethical duties.

Plaintiffs then filed the instant motion for sanctions, requesting an order "1) admonishing Mr. Honowitz for breaching his professional responsibilities, and requiring Berkeley Millwork and Mr. Honowitz to jointly and severally pay [Plaintiffs'] attorneys' fees and reasonable costs incurred in investigating Mr. Honowitz's conduct and pursuing this Motion; 2) directing Berkeley Millwork to return all information it obtained from Ms. Renner, ordering Berkeley Millwork for the Court's and [Plaintiffs'] inspection all evidence it has obtained through this or any other misrepresentations, and precluding Berkeley Millwork from using any evidence gained through its counsel's misrepresentations in this litigation; 3) requiring Berkeley Millwork and Mr. Honowitz to issue a written letter of apology to Ms. Renner; and 4) deciding [Plaintiffs'] pending discovery dispute in their favor."  [Docket No. 39 at 6-7].

After Plaintiffs filed their motion, Honowitz contacted Plaintiffs' counsel.  Honowitz stated that, "without admission and in an attempt to resolve your claims," he was sending Plaintiffs' counsel the emails and attachments he had received from Renner.  He further stated "I

am also prepared to delete them from my computer, agree not to utilize the emails provided in the pending litigation or for any purpose and apologize to Ms. Renner for any misunderstanding provided you agree to dismiss your Sanctions Motion." Honowitz Decl., Ex. 6.  Plaintiffs' counsel declined Honowitz's offer.  At the hearing, Honowitz volunteered to issue a written apology to Renner and delete any materials received from Renner from his server, and further promised not to rely on any of the materials received from Renner in this litigation.

## II. DISCUSSION

After reviewing Honowitz and Renner's accounts of their phone call, the court concludes that Honowitz misled Renner by holding himself out as an attorney representing a prospective buyer with an interest in purchasing Plaintiffs' home.   At the hearing, Honowitz conceded that the court could reach no other reasonable conclusion.

Plaintiffs contend that Honowitz and Defendant should be sanctioned for Honowitz's breach of his professional responsibilities pursuant to the California Rules of Professional Conduct, which are incorporated into this court's local rules.  Plaintiffs also point to the court's inherent power and the American Bar Association's Model Rules of Professional Conduct ("Model Rules") as sources of authority for issuing the requested sanctions.

Defendant and Honowitz counter that there is no specific case or rule of professional conduct which Honowitz violated.  They submit that Honowitz's conduct fell into a "gray area." Opp'n to Mot. at 4-6.   As such, they argue that Honowitz did not engage in sanctionable behavior.

### A. The California Rules of Professional Conduct and the Local Rules

A district court may discipline an attorney for conduct that violates a California Rule of Professional Conduct by way of its local rules of professional conduct. *See United States v. Wunsch*, 84 F.3d 1110, 1114 (9th Cir. 1996) (citing *Standing Comm. on Discipline v. Ross*, 735 F.3d 1168, 1170 (9th Cir. 1984, *appeal dism'd & cert. denied sub nom.*); *see also* Civ. L.R. 1-4 ("Failure by counsel or a party to comply with any duly promulgated local rule or any Federal Rule may be a ground for imposition of any authorized sanction."); *Chin v. Wal-Mart Stores, Inc.*, No. 14-cv-02538-TEH, 2014 WL 5465768, at *1-2 (N.D. Cal. Oct. 27, 2014) (citing Civ. L.R. 1-4) (imposing sanctions on attorney for violations of local rules).

Civil Local Rule 11-4(a) sets forth the "Standards for Professional Conduct" for attorneys permitted to practice before this court. It provides that attorneys must:

(1) Be familiar and comply with the standards of professional conduct required of members of the State Bar of California;
(2) Comply with the Local Rules of this Court;
(3) Maintain respect due to courts of justice and judicial officers;
(4) Practice with the honesty, care, and decorum required for the fair and efficient administration of justice;
(5) Discharge his or her obligations to his or her client and the Court; and
(6) Assist those in need of counsel when requested by the Court.

*Id.* Rule 11-4 incorporates "the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and decisions of any court applicable thereto" as its standard for professional conduct. *See* Commentary to Civ. L.R. 11-4*; see also United States v. Lopez*, 4 F.3d 1455, 1459 (9th Cir. 1993) (explaining that decisions of California state courts are binding on attorneys practicing in the Northern District of California through its local rules).

Although Local Rule 11-4 provides authority to sanction behavior that breaches California's standards of professional conduct, the court was unable to identify any case in which a court applied California law to sanction an attorney for misrepresentations made to third parties. Indeed, the California State Bar Compendium on Professional Responsibility, (*see* http://ethics.calbar.ca.gov/Publications/CompendiumonProfessionalResponsibilityIndex.aspx) (last accessed on Nov. 21, 2016) (the "Compendium"), does not list any ethical or advisory opinions or California cases in which a court imposed sanctions for misrepresentations made to third parties in the course of representing a client. The closest citations in the Compendium are still quite tangential, as they discuss an attorney's potential liability to third parties for specific torts such as legal malpractice or negligent misrepresentation. *Compare Home Budget Loans, Inc. v. Jacoby & Meyers Law Offices*, 255 Cal. Rptr. 483, 486-87 (Cal. App. Ct. 1989) (finding an attorney owed duty to third-party broker for misrepresentations which induced third-party broker to close the loan transaction and disburse loan to attorney's client) *with Schick v. Lerner*, 238 Cal. Rptr. 902, 907-09 (Cal. App. Ct. 1987) (finding an attorney owed no duty to psychologist's patient since patient was "a potential adverse party whose interest could not be represented by [the psychologist's] chosen counsel").

California imposes numerous rules and statutes governing an attorney's duty of honesty to clients, opposing counsel, and the court.[1] However, relatively few rules govern an attorney's professional responsibility toward unrepresented third parties. The few that address such conduct do so in fact-specific contexts which are unlike those here. *See*, *e.g.*, Cal. R. Prof'l Conduct 5-310(A), (B) (prohibiting attorneys from advising a witness to make him or herself unavailable as a witness and from compensating or offering to compensate a witness for his or her testimony); Cal. Bus. & Prof. Code § 6077.5 (outlining an attorney's duties toward debtors in collection of a consumer's debt).

Plaintiffs invoke California Business and Professions Code Section 6068(d), but only cite the fragment that appears to support their argument. That fragment says that an attorney must "employ, for the purpose of maintaining the causes confided to him or her those means only that are as consistent with truth . . . ." Mot. at 4. However, the full statute goes on to state "and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law," which suggests that section 6068(d) addresses a California attorney's duty of candor toward the court. Indeed, courts have only applied section 6068(d) to an attorney's communications with the court. *See*, *e.g.*, *In re Aguilar*, 97 P.3d 815, 819-20 (Cal. 2004), *rehrg' denied*, (citing section 6068(d); finding attorney in contempt of court and imposing monetary sanction for failing to notify the court that he would not appear for oral argument, where evidence showed attorney knew or had reason to know of the hearing date); *Mendez v. Superior Court*, 76 Cal. Rptr. 3d 538, 544 (Cal. Ct. App. 2008) (citing section 6068(d); no misrepresentation to the court where prosecutor was not aware that her colleague had known about a police officer's unavailability two calendar days earlier than the date the prosecutor represented to the court).

Plaintiffs did not identify any cases applying California law which come close to stating

---

[1] *See*, *e.g.*, Cal. R. Prof'l Conduct 5-200 ("In presenting a matter to a tribunal, a member . . . (B) shall not seek to mislead the judge, judicial officer, or jury by an artifice or false statement of fact or law"); 5-220 ("A member shall not suppress any evidence that the member or the member's client has a legal obligation to reveal or to produce."); 1 Witkin, Cal. Proc. 5th Attys § 484 (2008) ("Deliberately false representations to a client about the condition of the case or the performance of the attorney's duties are acts involving moral turpitude," and may subject an attorney to discipline).

that an attorney owes a general duty of candor to third parties, nor did the court find any. In fact, at least one case concluded that no such general duty exists. *See Schick*, 238 Cal. Rptr. at 907-908 (explaining that "[a]n attorney generally will not be held liable to a third party not in privity of contract with him since he owes no duty to anyone other than his client . . . . The imposition of a duty of "professional care toward third parties has generally been limited to those situations wherein the nonclient was an intended beneficiary of the attorney's services to the client, or where the foreseeability of harm to the nonclient as a consequence of professional negligence was not outweighed by other policy considerations.").

At the hearing, when asked to cite any case in which a court sanctioned an attorney under California law for misrepresentations made to a third party, Plaintiffs' counsel directed the court to *Allen v. State Bar*, 570 P.2d 1226 (Cal. 1977), and conceded that it is the only such case. *Allen* is far from apposite, for in that case, the California Supreme Court disbarred an attorney who engaged in blatantly outrageous behavior which included defrauding his client and misappropriating her funds, deceiving the same client while pursuing a scheme to transfer her real property to defraud a creditor, and, while representing his own sister, deceiving a bank officer into obtaining an intrabank transfer of funds held in the name of his sister's deceased husband. 570 P. 2d at 1226-30. Although the attorney's deceitful conduct toward the third party bank officer contributed to his disbarment, it was but a small part of a much larger pattern of unethical behavior.

Plaintiffs' counsel also points to section 6106 of the California Business and Professions Code. But section 6106 concerns an attorney's general duty of candor. *See* Cal. Bus. & Prof. Code § 6106 ("The commission of any act involving moral turpitude, dishonesty or corruption, whether the act is committed in the course of his relations as an attorney or otherwise, and whether the act is a felony or misdemeanor or not, constitutes a cause for disbarment or suspension."). Outside of *Allen*, section 6101 has not been applied to an attorney's communications with third parties.

In short, although Honowitz admittedly misled Renner, his conduct did not clearly violate the local rules of this court by contravening the California standards for professional conduct. As

such, his conduct cannot support an award of sanctions for violation of the local rules.

### B. The Court's Inherent Power to Sanction

Under "its inherent powers," a district court "may impose sanctions where a party has willfully disobeyed a court order, or where the party has acted in bad faith, vexatiously, or for oppressive reasons." *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 285 (N.D. Cal. 2015) (citation and internal quotations omitted). Such inherent power, however, "is not a broad reservoir, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 42 (1991). A district court must make a specific finding of "bad faith." *Lofton*, 308 F.3d at 285.

The bad faith requirement is a "high threshold." *Lofton*, 308 F.R.D. at 285. It encompasses more than mere negligence or even recklessness. *See*, *e.g.*, *Mendez v. Cty. of San Bernardino*, 540 F.3d 1109, 1131-32 (9th Cir. 2008), overruled on other grounds by *Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014) (en banc) (explaining that even when a district court has described a litigant's behavior as "totally frivolous," "outrageous," and "appalling," the court "nonetheless has refused to equate this characterization of conduct as synonymous with a finding of bad faith" (citation and internal quotation marks omitted)); *Moore v. Chase*, No. 1:14-cv-01178-SKO, 2016 WL 521320, at *4 (E.D. Cal. Feb. 10, 2016) ("Even where counsel repeatedly errs - even after admonition to abide by the Rules - such conduct as a vigorous advocate still does not rise to the level of intentional bad faith misconduct" warranting sanctions under the court's inherent powers (citation and internal quotation marks omitted)). The requirement contemplates "willful misconduct or recklessness that is coupled with an improper purpose," or conduct "tantamount to bad faith." *Lofton*, 308 F.R.D. at 285; *Fink v. Gomez,* 239 F.3d 989, 994 (9th Cir. 2001).

Given the lack of guidance from the standards governing California attorneys' professional conduct to address the issue at hand, the court cannot conclude that Honowitz' behavior amounted to a clear ethical violation, much less one made in bad faith.

### C. Model Rules

In their motion, Plaintiffs also cite to Model Rules 4.1(a) and 8.4(c) as a basis for their

sanctions request. Model Rule 4.1 provides in relevant part that an attorney must not "knowingly: (a) make a false statement of material fact or law to a third person; or (b) fail to disclose a material fact to a third person, when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6." Model Rule 8.4(c) states that it is "professional misconduct for a lawyer to: (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

Model Rule 4.1 addresses Honowitz's conduct more specifically. However, it is not binding on Honowitz, since California did not adopt the Model Rules. *See* http://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_prof essional_conduct/alpha_list_state_adopting_model_rules.html (last accessed on Nov. 21, 2016). California instead follows its own Rules of Professional Conduct and other statutes governing professional conduct of attorneys. *See*, *e.g.*, *Gen. Dynamics Corp. v. Superior Court*, 876 P.2d 487, 503, n.6 (Cal. 1994). In *General Dynamics Corp*., the California Supreme Court concluded that an in-house attorney may state a retaliatory discharge claim in certain limited circumstances. *Id*. However, it explained that such claims must be rooted in "explicit and unequivocal ethical norms embodied in the Rules of Professional Responsibility and statutes," among other things, and "expressly decline[d ] to adopt as a predicate for retaliatory discharge claims by in-house counsel either the Model Rules of Professional Conduct or the Model Code of Professional Responsibility, both of which have no legal force of their own." *Id*. (citation and internal quotation marks omitted) (emphasis in original omitted).

While this court may look to the Model Rules for guidance on acceptable conduct, the court cannot enforce them. *See United States v. Nosal*, No. C 08-00237 MHP, 2009 WL 482236, at *2 (N.D. Cal. Feb. 25, 2009) (Model Rules provided guidance to the court on the issue of whether personal conflicts are imputed to others in a government office) [2]; *see also State Comp.*

---

[2] Some federal district courts within California have a local rule of professional conduct which explicitly lists the Model Rules as providing "guidance." *See*, *e.g.*, E.D. Cal. R. 180(e) ("In the absence of an applicable standard therein, the Model Code of Professional Responsibility of the American Bar Association may be considered guidance."); C.D. Cal. R. 83-3.1.2 (explaining that the "Model Rules of Professional Conduct of the American Bar Association may be considered as guidance" for standards of professional conduct). The Northern District of California's local rules do not make reference to the Model Rules.

*Ins. Fund v. WPS, Inc.*, 82 Cal. Rptr. 2d 799, 806-07 (Cal. App. Ct. 1999) (concluding that counsel "should have not been sanctioned for engaging in conduct condemned by an ABA formal opinion, but which has not been condemned by any decision, statute, or Rule of Professional Conduct applicable in this state" and reversing sanctions order).

As an aside, although not cited by either party, in *Paul E. Iacono Structural Eng'r, Inc. v. Humphrey* ("*Iacono*"), 722 F.2d 435, 440 (9th Cir. 1983), the Ninth Circuit concluded that the district court did not commit reversible error by relying on the Model Code (which predated the Model Rules) as a basis to disqualify a law firm. However, *Iacono* appears to be limited to its facts. It has been cited primarily in the context of attorney or law firm disqualification motions for the general proposition that a court may look to the Model Rules for guidance in addressing issues not fully addressed by the California rules. *See*, *e.g.*, *Loops Al Labs, Inc. v. Gatti*, No. 15-cv-00798-HSG, 2016 WL 344874, at *1 (N.D. Cal. Jan. 28, 2016).

As conceded by Plaintiffs' counsel at the hearing, there are no state or federal cases applying California standards in which a court has sanctioned an attorney solely for violating Model Rule 4.1 or 8.4 for misrepresentations made to a third party. At most, some cases mention those rules in dicta or in factual contexts that are different from the one presented here. *See*, *e.g.*, *United States v. Sierra Pac. Indus.*, 759 F. Supp. 2d 1215, 1218 (E.D. Cal. 2011) (affirming magistrate judge's finding a violation of California Rule of Professional Conduct 2-100; in dicta, district court noted that it was "troubled" by defendant's attorney's behavior toward employees of the U.S. Forest Service, citing Model Rules 4.1 and 8.4); *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1064 (9th Cir. 2007) (explaining in dicta that information sent by law firm to unrepresented parties whose interest conflicted with those of the law firm might have violated Model Rule 4.1(a), but affirming sanctions on other grounds); *In re Hubbard*, No. 12-cv-1975-L (WMc), 2013 WL 435945, at *1-5 (S.D. Cal. Feb. 4, 2013) (sanctioning an attorney for intentionally deceptive and misleading conduct toward opposing counsel and the court as a violation of the California Rules of Professional Conduct, the State Bar Act, and various Model Rules including 4.1(a) and 8.4); *In Re Boyd*, 243 B.R. 756, 760, n.2 (N.D. Cal. 2000) (citing

Model Rule 4.1 (1999 ed.) in a footnote discussing an attorney's duty of candor to adverse party, no discussion of the Rule).

In sum, the Model Rules do not provide a basis for sanctioning Honowitz.

### III. CONCLUSION

Honowitz's conduct is troubling. In creative pursuit of informal discovery, he misled Renner, who was simply doing her job as a real estate broker to her clients. He placed her in a potentially precarious situation, as she could have been tricked into violating her own professional duties to her clients. Although Honowitz's conduct was questionable and misguided, the court cannot conclude that it rose to the level of bad faith as required for this court to issue sanctions under its inherent authority. Nor can it conclude that Honowitz clearly violated an applicable California Rule of Professional Conduct under which this court could exercise its discretion to issue a sanction for violation of this district's local rules.

Honowitz volunteered in open court to make a written apology to Ms. Renner, to delete any information he received from Ms. Renner from his server, and to not rely on any information he received from Ms. Renner in this litigation. Thus, Honowitz has taken it upon himself to remedy the harm caused by his actions.

In light of the above, having considered the papers and the oral argument, Plaintiffs' motion is **DENIED**.

**IT IS SO ORDERED.**

Dated: November 21, 2016



_____
Donna M. Ryu
United States Magistrate Judge