UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEVE CAKEBREAD, et al.,

        Plaintiffs,

   v.

BERKELEY MILLWORK AND
FURNITURE CO., INC.,

        Defendant.

Case No. 16-cv-00083-RS

**ORDER GRANTING BERKELEY MILLWORK'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE CAKEBREADS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I. INTRODUCTION

In 2007, the Cakebreads contracted Berkeley Millwork to design, manufacture, and deliver custom furniture for their compound in Wyoming. Their plans changed and, at some point, the Cakebreads ultimately cancelled their order. They now seek a refund of their deposit. They argue that a refund is due under the contract because the order was cancelled prior to fabrication and, on that basis, move for partial summary judgment on their breach of contract and conversion claims. At the same time, Berkeley Millwork moves for summary judgment, arguing that this action is time-barred and that the Cakebreads fail to state a claim for conversion. For the reasons that follow, Berkeley Millwork's motion is granted and the Cakebreads' motion is denied.

## II. FACTUAL BACKGROUND

Berkeley Millwork designs, manufactures, and sells custom furniture. In 2006, the Cakebreads retained Berkeley Millwork to produce designs for custom furniture for their commercial cattle ranch compound in Wyoming. They paid $15,000 for this service. The next year, the parties entered into an agreement for the sale of the furniture.

    A.  Sales Order

United States District Court
Northern District of California

On or about January 26, 2007, the parties signed a contract, in which Berkeley Millwork agreed to build custom furniture for the Cakebreads' kitchen, closet, hallway, and pantry for $310,400. At that time, the Cakebreads paid a deposit of $155,200, fifty percent of the total purchase price. The remainder would be due when Berkeley Millwork gave notice that the order had been built. The Sales Order had a target delivery date of June 2008.

The front page of the Sales Order states that cancellations are permitted prior to fabrication with a 15% fee. Shaw Decl., Ex. 1 ("There will be a 15% handling and design fee for any cancellation of orders. Cancellation may only be made prior to fabrication of your order.") It also provides, in Section Two: "All deposits are nonrefundable unless otherwise stated herein" and "ALL SALES ARE FINAL." *Id.*, Ex. 2. It further provides that the Sales Order and the Terms and Conditions "set forth all promises, agreements, conditions and understandings, whether written or oral, between the parties hereto with respect to the subject matter hereof." *Id.*

B.  Modification and Cancellation of the Sales Order

In July 2007, the Cakebreads notified Berkeley Millwork that they selected a new architect for the Wyoming project. They said the change might require some "re-working" of Berkeley Millwork's plans. Shaw Decl., Ex. 4. In August 2007, the Cakebreads notified Berkeley Millwork that they were again switching architects and requested a "temporary hold on the cabinet making." *Id.* In early 2008, the Cakebreads resumed the project and introduced Berkeley Millwork to the new architects. On May 8, 2008, Berkeley Millwork e-mailed the Cakebreads stating:

> We are now entering into a new Design Retainer Agreement and Sales Order under Backen Gilliam Architects. Please sign and return fax the two attached documents to Fax: 510-548-0865. We can simply subtract it from your deposit of January 29th, 2007. As per our agreement, we will honor the 2006 pricing structure for all areas of the upcoming project.

> We look forward to meeting with you in the offices of Backen Gilliam on May 14th 2008, at 10:45 AM, and to presenting the new designs.

United States District Court
Northern District of California

*Id.*, Ex. 6.  On May 12, 2008, the Cakebreads signed the quote for the second design agreement. On October 15, 2008, the Cakebreads sent an email saying they had reviewed the samples sent to the architects, which were "very close in color," and asking for a "revised cost" estimate for the project.  *Id.*, Ex. 9.  On November 2, 2008, the Cakebreads again "put [the] Wyoming project on hold," stating they would "let [Berkeley Millwork] know when [they] start it up again – hopefully in the spring."  *Id.*, Ex. 10.  In July 2009, the Cakebreads advised Berkeley Millwork that they were "starting to spin up" their project again and asked for the current drawings.  *Id.*, Ex. 11.

On September 5, 2009, Berkeley Millwork sent a new purchase order proposal to the Cakebreads.  It provided for the sale of custom furniture, including a kitchen, pantry, bench, and closet, according to the new 2009 drawings.  Shaw Decl. Ex. 12.  Per its terms, that quote was "valid for thirty days."  *Id.*  Even though the Cakebreads said they would respond the week of September 20, 2009, they never did.  In fact, Berkeley Millwork never heard back.  Finally, on November 3, 2009, Berkely Millwork contacted the Cakebreads to inquire about the status of the project.  In response, the Cakebreads said they would respond before Thanksgiving.  They never did.  In or around March 2011, the Cakebreads ordered kitchen cabinets from some other source.

C. Refund Request

On June 25, 2015, the Cakebreads emailed Berkeley Millwork saying: "Apologies for the long delay but we have been closing out our records regarding our project in Star Valley Wyoming and realized we have an unused balance of $330,000.00 that was not consumed because we cancelled the project. Can you please work on returning our unused deposit."  Shaw Decl., Ex. 16. Berkeley Millwork's CEO, Gene Agress, responded by noting that the "standing deposit" was actually "around $140,000" but offering to "make things right."  Forrest Opp. Decl., Ex. 2.  He also forwarded the Cakebreads an e-mail from Berkley Millwork's accountant, which listed the various payments they made and concluded that "the net remaining deposit available for use is $140,200."  *Id.*, Ex. 3.  When the Cakebreads asked for a refund of the "open amount," Agress responded: "I made a copy of the back section of contract you signed. Please read section two, it describes the deposit terms.  That said, you are very good people, and we intend to make things

1  right." Shaw Reply Decl., Ex. 1. He later sent them a proposed "repayment proposal," which

2  included certain monthly payments and additional payments "whenever possible," totaling

3  $91,390.00. Forrest Opp. Decl. Ex. 4. He expressed that he was not "holding back on paying."

4  Shaw Decl., Ex. 8. In January 2016, when efforts to compromise or arbitrate were unsuccessful,

5  the Cakebreads initiated the present action. They bring claims for: (i) breach of contract; (ii)

6  breach of the implied covenant of good faith and fair dealing; and (iii) conversion.

7  III. LEGAL STANDARD

8  Summary judgment is proper "if the pleadings and admissions on file, together with the

9  affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

10  party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary

11  judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v.*

12  *Catrett*, 477 U.S. 317, 323-24 (1986). The moving party "always bears the initial responsibility of

13  informing the district court of the basis for its motion, and identifying those portions of the

14  pleadings and admissions on file, together with the affidavits, if any which it believes demonstrate

15  the absence of a genuine issue of material fact." *Id.* at 323 (citations and internal quotation marks

16  omitted). If it meets this burden, the moving party is then entitled to judgment as a matter of law

17  when the non-moving party fails to make a sufficient showing on an essential element of the case

18  with respect to which he bears the burden of proof at trial. *Id.* at 322-23.

19  The non-moving party "must set forth specific facts showing that there is a genuine issue

20  for trial." Fed. R. Civ. P. 56(e). The non-moving party cannot defeat the moving party's properly

21  supported motion for summary judgment simply by alleging some factual dispute between the

22  parties. To preclude the entry of summary judgment, the non-moving party must bring forth

23  material facts, i.e., "facts that might affect the outcome of the suit under the governing law . . . .

24  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty*

25  *Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The opposing party "must do more than simply show

26  that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v.*

27  *Zenith Radio*, 475 U.S. 574, 588 (1986).

28

United States District Court
Northern District of California

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT
CASE NO. 16-cv-00083-RS

4

1   The court must draw all reasonable inferences in favor of the non-moving party, including

2   questions of credibility and of the weight to be accorded particular evidence.  *Masson v. New*

3   *Yorker Magazine, Inc*., 501 U.S. 496 (1991) (citing Anderson, 477 U.S. at 255); *Matsushita*, 475

4   U.S. at 588 (1986).  It is the court's responsibility "to determine whether the 'specific facts' set

5   forth by the nonmoving party, coupled with undisputed background or contextual facts, are such

6   that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W.*

7   *Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 631 (9th Cir. 1987).  "[S]ummary

8   judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such

9   that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

10   However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the

11   non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

12   III. DISCUSSION

13   Each party has filed its own motion for summary judgment.  Berkeley Millwork moves for

14   summary judgment on the grounds that the Cakebreads' claims are time-barred and also that no

15   conversion claim exits on the facts present here.  The Cakebreads move for partial summary

16   judgment on the ground that they are entitled to a refund of their deposit because they cancelled

17   the order prior to fabrication.[1]

18   A.  Berkeley Millwork's Motion for Summary Judgment

19   1. Breach of Contract Claims

20   Berkeley Millwork argues that the Cakebreads' breach of contract claims are barred by the

21   applicable statute of limitations.  "Statute of limitations" is the collective term applied to acts or

22   parts of acts that prescribe the periods beyond which a plaintiff may not bring a cause of action.

---

[1] Berkeley Millwork argues that the Cakebreads violated the Case Management Scheduling Order, Dkt. No. 23, by filing a second motion for summary judgment without leave to do so.  In August 2016, the Cakebreads moved for summary judgment on Berkeley Millwork's counterclaims, but that motion was rendered moot when Berkeley Millwork voluntarily dismissed those claims.  The Cakebreads might have been precluded from filing a second summary judgment motion if their prior motion had been fully briefed and decided, but it was not.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT
CASE NO. 16-cv-00083-RS

*Fox v. Ethicon Endo–Surgery, Inc.*, 35 Cal.4th 797, 806 (2005).  There are several policies underlying such statutes.  One purpose is to give defendants reasonable repose, thereby protecting parties from "defending stale claims, where factual obscurity through the loss of time, memory or supporting documentation may present unfair handicaps." *Id.* (citation omitted).  A statute of limitations also stimulates plaintiffs to pursue their claims diligently. *Id.*  A countervailing factor, of course, is the policy favoring disposition of cases on the merits rather than on procedural grounds. *Id.*

Under California law, "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." Cal. Comm. Code §2725.  Generally, an action accrues "at the time when the cause of action is complete with all of its elements." *Fox*, 35 Cal.4th at 806 (citation omitted).  The elements for a breach of contract action under California law are: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages to plaintiff as a result of the breach. *See CDF Firefighters v. Maldonado*, 158 Cal.App.4th 1226, 1239 (2008).  "When damages are an element of a cause of action, the cause of action does not accrue until the damages have been sustained." *City of Vista v. Robert Thomas Sec., Inc.*, 84 Cal. App. 4th 882, 886 (2000); *see also Walker v. Pacific Indemnity Co.*, 183 Cal.App.2d 513, 517 (1960) ("mere possibility, or even probability, that an event causing damage will result from a wrongful act does not render the act actionable").

a. Accrual Date

The parties dispute when the action for breach of contract accrued in this case.  The Cakebreads argue that the claims did not accrue until 2015 when Berkeley Millwork refused their refund request.  Berkeley Millwork advances several alternative accrual dates: (i) in May 2008, when the Sales Order became inoperative because the parties agreed to enter into a new design agreement; (ii) in October 2009, when the Cakebreads failed to accept the new sales order quote within the thirty day window in which the offer was valid; (iii) in November 2009, when the Cakebreads abandoned the contractual relationship; or (iv) in January 2011, when the Cakebreads' window to demand a refund expired.  Under any theory, Berkeley Millwork argues, the claims

1    accrued more than four years ago.

2       Berkeley Millwork's contention that the claims accrued before the Cakebreads demanded a

3 refund is problematic.  Under California law, "the [limitations] period cannot run before plaintiff

4 possesses a true cause of action, [which means] that events have developed to a point where

5 plaintiff is entitled to a legal remedy." *Davies v. Krasna*, 14 Cal.3d 502, 513 (1975).  "Where a

6 demand is an integral part of a cause of action, the statute of limitations does not run until demand

7 is made." *Stafford v. Oil Tool Corp*., 133 Cal. App. 2d 763, 765 (1955).  Under the terms of the

8 Sales Order, the Cakebreads had to make the demand before a refund was due.  Specifically, the

9 Sales Order provides: "There will be a 15% handling and design fee for any cancellation of orders.

10 Cancellation may only be made prior to fabrication of your order."  Berkeley Millwork argues that

11 "this provision is self-executing" in that whenever the contract might be deemed cancelled, even

12 without an express cancellation and irrespective of "whether the Cakebreads knew it or not," a

13 refund is owed and no further demand for a refund is required for the claim to accrue.  Mot. at 13.

14 The plain language of the contract, however, does not support that interpretation.  The Sales Order

15 says that the cancellation must "be made."  Moreover, given that there are two possible

16 interpretations of the provision, the one that avoids forfeiture is preferred.  *See Milenbach v.*

17 *C.I.R.*, 318 F.3d 924, 936 (9th Cir. 2003) ("Where there are two possible interpretations of a

18 contract, one that leads to a forfeiture and one that avoids it, California law requires the adoption

19 of the interpretation that avoids forfeiture, if at all possible.")  Accordingly, the Cakebreads could

20 not have incurred damages until the refund demand was made and rejected.[2]

21

22    [2] Berkeley Millwork's theory that the Cakebreads abandoned the contractual relationship is not
necessarily foreclosed by this finding but is fraught for other reasons.  "The acts and conduct

23 which may be relied on to constitute the abandonment must 'be clearly proved, and they must be
positive, unequivocal and inconsistent with the existence of a contract.'" *Ross v. Tabor*, 53 Cal.

24 App. 605, 615 (1921) (citation omitted).  Viewing the factual record in the light most favorable to
the Cakebreads, there is a genuine issue as to the fact of abandonment.  Their November 2009

25 email is too vague alone to constitute abandonment.  Their March 2011 order of custom furniture
from another source was not entirely inconsistent with the continued existence of a contract

26 because it related only to kitchen cabinetry and, moreover, it was not conduct known to Berkeley
Millwork until after the commencement of litigation, so Berkeley Millwork could not have relied

27 upon that fact to infer abandonment.  Berkeley Millwork notes that, in 2010, the Cakebreads'
contractor told a Berkeley Millwork employee not to call him anymore.  Shaw Reply Decl., Ex. 2

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Given that a demand was required, this dispute centers primarily on whether the

2   Cakebreads' demand was timely.  Where the defendant's obligation to perform arises when the

3   plaintiff demands performance, the demand must be made within a "reasonable time" and the

4   statute of limitations will begin to run after that time has elapsed.  *See* 3 Witkin, Cal. Proc. 5th

5   Actions § 532 (2008); *Bass v. Hueter*, 205 Cal. 284, 287 (1928).  The reason for this rule is that

6   "[t]he plaintiff cannot [] indefinitely suspend the running of the statute by delaying to make a

7   demand."  *Stafford*, 133 Cal. App. 2d at 765.  "[W]here a right has fully accrued, except for some

8   demand to be made as a condition precedent to legal relief, which the claimant can at any time

9   make, if he so chooses, the cause of action has accrued for the purpose of setting the statute of

10   limitations running. ... Otherwise, ... he might indefinitely prolong his right to enforce his claim or

11   right by neglecting to make the demand until it suited his convenience so to do.'" *Huynh v. Chase*

12   *Manhattan Bank*, 465 F.3d 992, 998 (9th Cir. 2006) (citing *Taketa v. State Bd. of Equalization*,

13   104 Cal.App.2d 455, 231 P.2d 873, 875 (1951)).

14    The Cakebreads contend that the "reasonable time" requirement is inapplicable here

15   because it only applies to contracts that do not specify deadlines for performance.  As they note,

16   California Civil Code Section 1657 provides: "If no time is specified for the performance of an act

17   required to be performed, a reasonable time is allowed."  *See also Stafford*, 133 Cal. App. 2d at

18   765 ("The general rule is that where demand is necessary to perfect a right of action and no time

19   therefor is specified in the contract, the demand must be made within a reasonable time after it can

20   lawfully be made.").  The Cakebreads argue that the Sales Order specified a deadline for

21   performance because it states: "Cancellations may only be made *prior to fabrication of your*

22   *order*."  Shaw Decl. Ex. 1.  In practice, however, this provision does not provide a specific

23

24   at 154:11-12 ("the contractor told [the employee] . . . not to call him anymore; that he'd call us if
     he wanted to talk to us").  Even if such evidence were admissible, it is too vague to be
25   determinative.  Agress did not testify as to the circumstances of the conversation or the exact
     words that were spoken.  Of course, the most glaring evidence of abandonment is the Cakebreads'
26   years of silence.  At bottom, however, drawing all inference in the Cakebreads' favor, their
     conduct was not sufficiently positive, unequivocal and inconsistent with the existence of a contract
27   to eliminate any genuine question of fact as to abandonment.

28

deadline.  The "reasonable time" requirement applies when the time for performance is either "not specified" or "indefinite."  *Bass*, 205 Cal. at 287.  Here, the deadline is indefinite.  The term "fabrication" is sufficiently vague that the parties can and do dispute its meaning.  Accordingly, the contract is not clear as to the deadline for performance.  Moreover, the Cakebreads argue resolutely in their motion for summary judgment that fabrication had not begun in August 2007 when they put the cabinet making on hold.  As such, under their own theory, the Cakebreads could have cancelled their order at any time after the Sales Order was signed in January 2007.  Nothing in the Sales Order specifies any definite deadline for the Cakebreads to request a refund.  In fact, to the extent the Sales Order included a specific deadline—i.e., the target delivery date of June 25, 2008—that deadline was rendered inoperative at the Cakebreads' own request.

The Cakebreads also argue that the "reasonable time" requirement contradicts a line of California cases which hold that when an insurance broker fails to provide insurance, the cause of action for professional negligence will not accrue until the plaintiff actually suffers injury.  They rely heavily on *Buschman v. Anesthesia Bus. Consultants LLC*, 42 F. Supp. 3d 1244, 1251 (N.D. Cal. 2014).  There, an anaesthesiologist sued a consultancy group alleging that it erroneously cancelled his group disability insurance policy.  The policy was cancelled in 2006, but the plaintiff did not realize that fact until 2012, when he became disabled as a result of a surgery.  In light of the aforementioned line of insurance cases, the court concluded that the plaintiff's claims were not time-barred.  This case, however, is different.  In *Buschman*, plaintiff had no control over the timing of the insurance policy cancellation, which happened due to the defendant's negligent and careless handling of his policy.  Here, the Cakebreads fully controlled the timing of the agreement.  They decided when to demand performance either by requesting the manufacture of furniture or by demanding repayment of their refund.  It was their negligence and delay that lead to years of inaction.

Additionally, the Cakebreads argue that the "reasonable time" requirement does not apply because Berkeley Millwork controlled the timing of fabrication.  It is true that the reason for the requirement disappears when the demand is not under the plaintiff's control, but depends upon the

United States District Court
Northern District of California

act of another.  "If the condition of the obligation is some other person's act, and the plaintiff's demand would merely bring pressure on that person, failure to make the demand does not start the running of the statute."  3 Witkin, Cal. Proc. 5th Actions § 534 (2008).  This exception is premised on the notion that the statute should not run if the delay is caused by some other person's lack of diligence.  *See Williams v. Pac. Mut. Life Ins. Co*., 186 Cal. App. 3d 941, 951 (1986) (citing *Williams v. Bergin*, 116 Cal. 56, 61 (1897)).  Here, the only party lacking in diligence was the Cakebreads.  Moreover, as explained above, their argument that Berkeley Millwork controlled the timing of fabrication is inconsistent with their behavior and with the theory of liability advanced in their own motion for summary judgment.

Finally, the Cakebreads argue that imposing the "reasonable time" requirement here would create an unlawful penalty because they would forfeit their entire deposit without regard to actual damage.  They rely on the rule that "'any provision by which money or property would be forfeited without regard to the actual damage suffered would be an unenforceable penalty.'"  *Freedman v. The Rector*, 37 Cal.2d 16 (1951).  That rule relates to contractual forfeiture provisions, but the issue here is the application of the statute of limitation.  Thus, while the argument may have some appeal as a matter of equity, there is no law to support it.

Having found that the "reasonable time" requirement is applicable, the only remaining question is how to apply it.  Generally, "the reasonableness of time for performance is a question of fact, which depends on the circumstances of the particular case."  *Eidsmore v. RBB, Inc.*, 25 Cal.App. 4th 189, 198 (1994).  "But . . . the courts have added the qualification that, in the absence of peculiar circumstances, a period equal to that of the statute of limitations is reasonable. Under this theory the plaintiff has at most a double statutory period (4 plus 4 years on written contracts)."  3 Witkin, Cal. Proc. 5th Actions § 533 (2008); *see also Caner v. Owners' Realty Co*., 33 Cal. App. 479, 481 (1917) ("[A]s no demand was made within four years after the contracts in suit were executed, all of the causes of action arising therefrom and pleaded in the plaintiff's complaint were. . . barred by the statute of limitation."); *Stafford v. Oil Tool Corp*., 133 Cal. App. 2d 763, 766 (1955) ("in the absence of peculiar circumstances, a time coincident with the running of the

statute will be deemed reasonable, and if a demand is not made within that period, the action will be barred"); *Ginther v. Tilton*, 206 Cal. App. 2d 284, 286 (1962) (same).[3]  Accordingly, Berkeley Millwork argues that, because the Sales Order was entered into in January 2007, the Cakebreads had until January 2011 to demand performance and then they would have had until January 2015 to file an action.

The Cakebreads do not suggest an alternative calculation, nor do they argue that any peculiar circumstance exists here.  Rather, they maintain that their demand came at a reasonable time.  Of course, their demand could have come at any time because there was no tether between the date they made the demand and any element of the parties' negotiations.  The Cakebreads made their demand, admittedly, when they decided to look at their records.  They could have done so sooner or much later and, under their theory, any time would have been fine.  This theory is unsupportable.

Even viewed in the light most favorable to the Cakebreads, there is no disputed fact which necessitates departure from the well-established rule that a demand period equal to the statute of limitations is reasonable.  There is nothing in the Sales Order which would indicate that it was the intention of the parties that the refund demand should be delayed indefinitely.  *See Bass*, 205 Cal. at 288.  To the contrary, the Sales Order reflects the parties' intention that the performance would be completed by June 2008.  If anything, the record here evidences delay and negligence by the Cakebreads, facts which do not support a finding that the application of the statute of limitations would work an injustice.  Under the circumstances, the Cakebreads' demand for performance made more than eight years after entering the agreement was unreasonable as a matter of law.

---

[3] "Where the obligation is simply to pay money on demand, no 'reasonable' or other time is added to the limitations period.  The 'demand' is not viewed as a condition but merely as an indication of the immediate maturity of the debt.  Hence, the statute begins to run at the inception of the agreement, when the obligation was incurred."  3 Witkin, Cal. Proc. 5th Actions § 533 (2008).  The obligation here cannot properly be characterized as an obligation "simply to pay money on demand" because the Cakebreads had the option between demanding performance and demanding the refund.  Neither party suggests the statute began to run in January 2007 when the agreement was signed.

United States District Court
Northern District of California

b. California Code of Civil Procedure § 360

The Cakebreads argue that, even if the statute of limitations had expired prior to May 2015, it was then revived. They rely on California Code of Civil Procedure § 360, which provides: "No acknowledgment or promise is sufficient evidence of a new or continuing contract, by which to take the case out of the operation of this title, unless the same is contained in some writing, signed by the party to be charged thereby. . ." Cal. Code Civ. Proc. § 360.[4] "The acknowledgment referred to in the statute is not such as may be deduced by inference from a promise or an offer to pay a part of the debt, or to pay the whole debt in a particular manner, or at a specified time, or upon specified conditions. The acknowledgment, say the cases, must be a direct, distinct, unqualified, and unconditional admission of the debt which the party is liable and willing to pay." *Heiser v. McAlpine*, 20 Cal. App. 2d 467, 470 (1937).

The Cakebreads argue that, in a series of emails discussing their refund request, Berkeley Millwork "acknowledged" an existing debt within the meaning of section 360. Those e-mails, however, do not constitute "a distinct and unqualified admission of an existing debt." *Outwaters v. Brownlee*, 22 Cal.App. 535, 539 (1913).[5] While Agress acknowledged "a standing deposit

---

[4] Berkeley Millwork argues that section 360 is inapplicable here because it only applies to statutes of limitation listed in Title 2, Chapter 4 of the Code of Civil Procedure. While Berkeley Millwork cites Commercial Code Section 2725 as the basis for the four year statute of limitations applicable in this case, Section 337 of the Code of Civil Procedure also sets out a statute of limitation for an action on contract and is thus applicable.

[5] Some of those e-mails are internal, between Berkeley Millwork employees and board members, and thus irrelevant for purposes of section 360. *See Clunin v. First Fed. Trust Co.*, 189 Cal. 248, 251 (1922) ("It is very certain that an actual promise can only be made to the creditor, and it follows that the acknowledgment from which the promise is to be inferred must be made to the creditor."). Others relate to Berkeley Millwork's offered repayment plan, and Berkeley Millwork objects to those on the ground that offers of compromise are inadmissible to prove liability under Fed. R. Evid. 408(a). The Cakebreads argue that those e-mails are not being offered to prove liability, but rather to establish the applicable statute of limitations, so they are admissible under Rule 408(b). As explained above, however, the e-mails are not acknowledgements of a debt because there is evidence here of a "genuine dispute or even disagreement" about the debt. *Bank of Am., N.A. v. Sea-Ya Enters.*, LLC, 872 F. Supp. 2d 359, 363 (D. Del. 2012). Accordingly, Rule 408(b) is inapplicable. Moreover, "care should be taken that an indiscriminate and mechanistic application of this exception to Rule 408, does not result in undermining the rule's public policy objective. . . . The trial judge should weigh the need for such evidence against the potentiality of discouraging future settlement negotiations." *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944 JST, 2016 WL 6216664, at *9 (N.D. Cal. Oct. 25, 2016) (citation omitted).

United States District Court
Northern District of California

around \$140,000," he did so in response to the Cakebreads suggestion that \$330,000 was owed. Forrest Opp. Decl. Ex. 2. Agress also disclaimed liability when he directed the Cakebreads to section two of the contract which "describes the deposit terms." Shaw Reply Decl., Ex. 1. That section says "all deposits are nonrefundable unless otherwise stated." Shaw Decl. Ex. 2. After pointing out the provision on nonrefundable deposits, Agress stated: "That said, you are very good people, and we intend to make things right." Shaw Reply Decl., Ex. 1. He proposed a payment proposal, which included certain monthly payments and additional payments "whenever possible," and only amounted to \$91,390.00, not the \$131,920.00, which the Cakebreads now claim they are owed. Forrest Opp. Decl. Ex. 4.[6]

In support of their position, the Cakebreads rely on *Buescher v. Lastar*, 61 Cal.App.3d 73 (1976). In *Buescher*, the plaintiff recovered on a demand note the defendant signed despite the expiration of the statute of limitations. The court found the facts there "constituted an unequivocal acknowledgment of the debt evidenced by the note; no new terms or conditions were requested or suggested by [the defendant]." *Id.* at 76. This case is different. Here, Agress indicated a disagreement, or at the least a potential disagreement, about the debt when he directed the Cakebreads to the limitations of liability under the contract. There was no unequivocal acknowledgement of a specific debt. Rather, there was an offer of compromise or, potentially, a substituted, conditional promise. Either way, the debt alleged in the complaint was not revived in 2015.

---

[6] To the extent the Cakebreads argue that Berkeley Millwork's repayment plan was a new promise, they waived that legal theory by failing to allege it in their complaint. In the case of a new promise, "if that promise be not a general promise to pay the obligation according to its tenor and terms, but is a promise coupled with any condition, and an action is brought after the statute of limitations would have barred the remedy upon the original obligation, the action of plaintiff is then upon the substituted, conditional promise, and not upon the original obligation." *Heiser*, 20 Cal. App. 2d at 470. While the Cakebreads appear to argue that Berkeley Millwork owes them the amount offered in Agress' repayment plan, see Opp. at 18, that is not what they alleged in their Complaint. Thus, even if this argument based on section 360 is meritorious, it was waived. *See Miran v. Convergent Outsourcing Inc.*, No. 16-CV-0692-AJB-(JMA), 2016 WL 7210382, at *3 (S.D. Cal. Dec. 13, 2016) (declining to consider on summary judgment a legal theory that is not alleged in the complaint).

1                    2. Conversion Claims

2       Berkeley Millwork argues that the Cakebreads fail to state a claim for conversion and that

3 such claim, if any, is time-barred.  The basic elements of conversion are (1) the plaintiff's

4 ownership or right to possession of personal property; (2) the defendant's disposition of the

5 property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting

6 damages.  *Fremont Indem. Co. v. Fremont Gen. Corp*., 148 Cal. App. 4th 97, 119 (2007).  "[A]

7 mere contractual right of payment, without more, will not suffice."  *Rutherford Holdings, LLC v.*

8 *Plaza Del Rey*, 223 Cal. App. 4th 221, 233 (2014).

9       Berkeley Millwork contends that the Cakebreads cannot satisfy the first element because

10 they lost their ownership interest in the deposit, even if they maintained a contractual right to

11 repayment after cancellation.  *Rutherford Holdings* is instructive.  There, the plaintiff contracted to

12 purchase a mobilehome park from defendants.  He delivered a $3 million deposit to defendants,

13 which their agreement provided was non-refundable unless defendants materially breached or

14 refused to close.  Neither party performed on the closing date and plaintiff sued to recover the

15 deposit under various theories, including conversion.  The court of appeal found that title to the

16 deposit transferred to defendants, such that plaintiff could not establish ownership.  In reaching

17 that decision, the court distinguished cases where buyers were entitled to the return of their

18 deposits pursuant to express escrow instructions.  "[I]n the absence of escrow instructions to the

19 contrary—title to a deposit vests in the seller when the seller 'accept[s] the contract.'" *Id.* at 233

20 (citations omitted).  There, as here, the deposit was not paid into escrow and the complaint did not

21 allege any escrow instructions.  The Cakebreads argue that *Rutherford* is distinguishable because

22 the Sales Order here includes a cancellation provision that purportedly entitles them to their

23 deposit, and also because the *Rutherford* contract specified that the deposit could be kept as

24 liquidated damages if the plaintiff breached or failed to close.[7]  Yet, like the Cakebreads, the

25 _____

26 [7] The Cakebreads rely on a Ninth Circuit opinion, *In re James E. O'Connell Co., Inc*., 799 F.2d
1258 (1986), which predates *Rutherford* and conclusorily affirmed a district court's holding that

27 the defendants' refusal to return plaintiff's deposit following defendants' anticipatory breach of
contract constituted conversion.

28                                   ORDER RE: MOTIONS FOR SUMMARY JUDGMENT
CASE NO. 16-cv-00083-RS

14

*Rutherford* plaintiff argued that he was entitled to his deposit under the contract's provision for refund. Moreover, the reasoning in *Rutherford* did not turn on the plaintiff's right to his deposit under contract, but rather on the absence of escrow instructions. Here, as in *Rutherford*, title to the deposit transferred to Berkeley Millwork when it accepted the contract and, thus, the Cakebreads cannot state a claim for conversion.

      B.  The Cakebreads' Motion for Partial Summary Judgment

      In light of the resolution of Berkeley Millwork's motion, the Cakebreads' motion for partial summary judgment is denied.

IV.  CONCLUSION

      Berkeley Millwork's motion for summary judgment is granted and the Cakebreads' motion for partial summary judgment is denied.

**IT IS SO ORDERED**.

Dated: February 13, 2017

RICHARD SEEBORG
United States District Judge