UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEVE CAKEBREAD, et al.,

    Plaintiffs,

    v.

BERKELEY MILLWORK AND FURNITURE CO., INC.,

    Defendant.

Case No. 16-cv-00083-RS

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES**

## I. INTRODUCTION

Defendant Berkeley Millwork and Furniture Company, Inc. ("Berkeley Millwork"), as the prevailing party, moves for an award of attorney's fees from the Cakebreads. Upon consideration of the materials submitted by the parties, Berkeley Millwork's motion is granted in part and denied in part, with Berkeley Millwork receiving an award of fees in the amount of $164,260, including $2,700 for Ramsey's fees and $161,560 for Honowitz and Shaw's fees. Pursuant to Civil Local Rule 7-1(b), this matter is suitable for disposition without oral argument and the April 6, 2017 hearing is vacated.

## II. BACKGROUND

The background of this dispute is discussed at length in the order granting summary judgment. In short, on January 26, 2007, the parties signed a contract, in which Berkeley Millwork agreed to build custom furniture for the Cakebreads' Wyoming ranch for $310,400 ("Sales Order"). At that time, the Cakebreads paid a deposit of $155,200, fifty percent of the total purchase price. The Cakebreads subsequently cancelled the Sales Order and, in June 2015, requested a refund of their deposit. In January 2016, after Berkeley Millwork refused to repay the full deposit amount immediately, the Cakebreads filed suit alleging breach of contract, breach of

implied covenant of good faith and fair dealing, and conversion. In response to the complaint, Berkeley Millwork filed counterclaims alleging that the Cakebreads used Berkeley Millwork's designs to manufacture the furniture through a third party and breached the Sales Order by failing to request that Berkeley Millwork complete and deliver the furniture.

In August 2016, the Cakebreads moved for summary judgment on Berkeley Millwork's counterclaims, but the hearing on that motion was continued pending the resolution of an underlying discovery dispute. Then, in September 2016, a separate discovery dispute arose stemming from a conversation between counsel for defendant, Mel Honowitz, and Pamela Renner, the real estate broker handling the listing for plaintiffs' Wyoming property. In an effort to seek informal discovery, Honowitz contacted Renner to ask for pictures and plans of the Wyoming property, purportedly for a party interested in buying the property, but actually for use in this case. The Cakebreads moved to sanction Honowitz for his conduct. Honowitz tried to resolve the dispute informally, by offering to return the materials he had received, delete them from his computer, agree not to utilize them in the pending litigation, and apologize to Renner. The Cakebreads nevertheless maintained their sanctions motion, which was ultimately denied. The order denying the motion reasoned that, while Honowitz's conduct was "questionable and misguided," it did not rise to the level of bad faith or violate a clearly applicable rule of professional conduct. Dkt. No. 48. The order found that Honowitz's offer to apologize, delete the materials, and refrain from relying on them in the litigation sufficiently remedied the harm caused by his actions. After that order was issued, Berkeley Millwork dismissed its counterclaims with prejudice.

In December 2016, the parties filed cross-motions for summary judgment. Berkeley Millwork's motion for summary judgment was granted on the ground that the Cakebreads' contract claims were time-barred and that they failed to state a claim for conversion. Berkeley Millwork now moves for attorneys' fees and costs. They seek fees for work done by their lawyers Mel Honowitz, Eric Shaw, and Bruce Ramsey, and their paralegal, Amy Barnett. The Cakebreads

oppose the motion and object to the bill of costs.[1]

## III. LEGAL STANDARD

The calculation of a reasonable fee award involves a two-step process. *Fisher v. SJB–P.D., Inc*., 214 F.3d 1115, 1119 (9th Cir. 2000). First, the court calculates the presumptive fee award, also known as the "lodestar figure," by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate. *Id.* (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)). Second, in "appropriate cases" the court may enhance or reduce the lodestar figure based on an evaluation of the factors set forth in *Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67, 69–70 (9th Cir. 1975), which were not taken into account in the initial lodestar calculation. *Intel Corp. v. Terabyte Intern., Inc*., 6 F.3d 614, 622 (9th Cir. 1993) (citation omitted).

## IV. DISCUSSION

California Civil Code § 1717 provides that "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract . . . shall be entitled to reasonable attorney's fees in addition to other costs." Cal. Civ. Code § 1717(a). The Sales Order here has an attorney's fees provision, which states: "In the event it is necessary to retain the services of legal counsel to enforce or interpret these Terms and Conditions of Sale, the prevailing party in any resulting action or proceeding, including arbitration, shall be entitled to record their reasonable attorney's fees and court costs." Dkt. 1, Ex. A. The Cakebreads do not dispute that Berkeley Millwork is generally entitled to reasonable attorney's fees and costs under the Sales Order. Instead, they propose several reductions to the fee award and argue that counsel have not shown their rates and hours are reasonable.

---

[1] On March 20, 2017, the clerk filed a bill of costs taxed in the amount of $3,564.04. The Cakebreads did not move for review of the clerk's action within seven days as required by Fed. R. Civ. Proc. 54(d)(1).

A. <u>Proposed Fee Reductions</u>

1. *Fees Related to the Motion for Sanctions*

The Cakebreads first argue that Berkeley Millwork is not entitled to any fees related to the sanctions motion. As an initial matter, they contend that fees on the sanctions motion are outside the scope of the attorney's fees provision. They cite no authority, however, to support such a narrow reading of that provision. The provision allows for fees in the event it is necessary to retain the services of legal counsel to enforce or interpret the terms of the Sales Order, as was the case here.

The Cakebreads further argue that Berkeley Millwork is not entitled to fees related to the sanctions motion because the order denying that motion deemed Honowitz's conduct "questionable and misguided." Dkt. No. 48 at 11. Ultimately, however, the motion for sanctions was denied and the magistrate judge concluded that Honowitz did not act in bad faith or violate a clearly applicable rule of professional conduct. She further concluded that Honowitz's offer to return the materials and apologize was sufficient to "remedy the harm caused by his actions." *Id.* While Berkeley Millwork's request for fees for the very conduct deemed "questionable and misguided" is unreasonable, their effort to recover fees expended in opposing the Cakebreads' motion is not. Honowitz sought to resolve the matter informally by making an offer to take actions which the magistrate judge found to be sufficiently curative and which the Cakebreads had rejected. *Id.* Berkeley Millwork, therefore, was forced to defend against the Cakebreads' motion. Accordingly, Honowitz's bills should be reduced by at least 4.4 hours, which is the amount of time listed for his call with Renner and his subsequent work related to the witness contact issue before the Cakebreads filed their sanctions motion.[2] Shaw's hours should be reduced by at least

---

[2] The entry listing Honowitz's call with Renner is blocked billed so there is no indication as to the length of the call. Because it is impossible to discern the amount of time attributable to the call alone, the entire entry should be removed. *See Minor v. Christie's, Inc.*, 2011 WL 902235, at *5 (N.D. Cal. Jan. 29, 2011). Additionally, the entry on September 20, 2016 is also block-billed and the description is too vague to assess whether it includes work related to the call with Renner. Presumably it does because it is the only entry accounting for Honowitz's work between the date of the call and the day the Cakebreads filed their sanctions motion during which Honowitz contends he worked to remedy the dispute. *See* Dkt. 43-1. Accordingly, that entire entry should

0.6 hours, which is the amount of time listed in entries noting work on the witness contact issue before the Cakebreads filed their sanctions motion.[3] Because Berkeley Millwork proposes to reduce the fees related to their sanctions motion by more than the aforementioned amounts, their proposal is reasonable and will be accepted.

### 2. *Fees for Berkeley Millwork's Transactional Lawyer*

The Cakebreads argue that Berkeley Millwork is not entitled to $2,700 for activities undertaken by Bruce Ramsey before the initiation of litigation. They claim that Ramsey's pre-litigation work falls outside the scope of the attorney's fees provision of the Sales Order and California Civil Code section 1717. They also contend that Mr. Ramsey's entries are too vague to recover fees. Neither argument is persuasive.

First, pre-litigation fees are recoverable under section 1717. *See Stokus v. Marsh*, 217 Cal. App. 3d 647, 655–656 (1990) ("nothing in that section precludes compensation for fees incurred prior to filing the complaint, where fees were reasonably and necessarily incurred at that time by the prevailing party"). They are also recoverable under the Sales Order. By its plain language, the Sales Order provides for fees in the event it is necessary to retain the services of legal counsel "to enforce or interpret" the terms of the contract. Ramsey assisted Berkeley Millwork in responding to the Cakebreads' initial demand for repayment in 2015, which necessarily involved interpretation of the Sales Order. Fees for similar pre-litigation work have been granted. *See, e.g., Signature Networks, Inc. v. Estefan*, 2005 WL 1249522, at *5 (N.D. Cal. May 25, 2005).

Second, given the limited period of time that Ramsey worked on this case and his discrete role, his time entries are sufficiently specific. The Cakebreads take issue, for example, with two entries that state "Draft letter to Cakebread counsel" and "Call with Gene to go over letter to Cakebreads' counsel." Ramsey Decl., Ex. A. Yet, Ramsey's declaration makes clear that he was

---

also be removed because it is impossible to determine the amount of time spent exclusively on the witness contact issue.

[3] Berkeley Millwork deducted fees for Shaw's time on September 14, 2016 in their reductions related to counterclaims, otherwise Shaw's time on that day would be included here.

retained to respond to the Cakebreads' demand letter and reply to their response. Accordingly, it is clear from the date of Ramsey's entries that he was drafting a response to the Cakebreads' demand letter and reviewing it with Berkeley Millwork. Berkeley Millwork's request for Ramsey's fees is appropriate and thus will be granted.

### 3. *Fees Related to the Cakebreads' Conversion Claim*

The parties agree that Berkeley Millwork is not entitled to fees for work related to the Cakebreads' conversion claim because Civil Code 1717 does not apply to tort claims. Honowitz and Shaw propose reducing their bills by 5 and 25 hours, respectively, for time spent working on issues related exclusively to the conversion claim. The Cakebreads argue that this reduction is insufficient because the issue of conversion took up considerable time for the parties as evidenced by the allocation of pages in their summary judgment motions to this issue. Yet, even under that rubric, Berkeley Millwork's proposal seems reasonable. Berkeley Millwork allocated approximately five pages to the issue of conversion out of fifty pages of summary judgment briefing. Shaw billed approximately 120 hours for work on the summary judgment motions, so the proposal to reduce his bills by 25 hours makes sense. Similarly, Honowitz billed approximately 25 hours for work on the summary judgment motions, so the proposal to reduce his bills by 5 hours seems reasonable. The Cakebreads arbitrarily propose adding 50 percent to each lawyer's estimated time spent on conversion, but offer no rationale for their proposal or legal authority in support of it.

### 4. *Fees Related to the Counterclaims*

The parties agree that Berkeley Millwork is not entitled to fees for work on the counterclaims which it voluntarily dismissed with prejudice. Honowitz and Shaw made a good faith effort to account for their time spent working exclusively on the counterclaims. Their proposal excludes fees for that time, but includes fees for time spent working on overlapping tasks related to other issues in the case.

As Berkeley Millwork notes, there is such overlap. For example, in the first counterclaim, Berkeley Millwork alleged that the Cakebreads arranged to have a third party manufacture

furniture based on Berkeley Millwork's original designs.  Berkeley Millwork contends that, in preparing to litigate that counterclaim, it collected information regarding the Cakebreads' decision to hire a third party to construct the furniture.  Such information, however, was also relevant to the subsequent summary judgment motions where Berkeley Millwork argued the Cakebreads' abandoned the contract when they hired a third party to build the furniture.  Likewise, in the second counterclaim, Berkeley Millwork alleged that the Cakebreads breached the Sales Order by failing to request completion of the goods after fabrication.  In preparing to litigate that counterclaim, Berkeley Millwork collected evidence regarding the fabrication process, which was also relevant to the subsequent summary judgment motions where Berkeley Millwork argued the Sales Order's refund provision was inapplicable because fabrication had begun.  Berkeley Millwork is entitled to fees for time spent on such overlapping issues.  *See Bell v. Vista Unified School Dist.*, 82 Cal. App.4th 672, 687 (2000)("fees need not be apportioned when incurred for representation on an issue common to both causes of action in which fees are proper and those in which they are not").

The Cakebreads further argue that Honowitz and Shaw offer no methodology for their proposed apportionments and that some of the entries are too vague to allow for proper apportionment.  Many entries are indeed too vague to evaluate the proposed apportionment objectively, but "[a]pportionment is not required when the claims for relief are so intertwined that it would be impracticable, if not impossible, to separate the attorney's time into compensable and noncompensable units."  *Id.*; *see also Drouin v. Fleetwood Enterprises*, 163 Cal.App.3d 486, 493 (1985)("Attorneys fees need not be apportioned between distinct causes of action where plaintiff's various claims involve a common core of facts or are based on related legal theories."). Nevertheless, the counterclaim-related entries which the Cakebreads identify as vague or block-billed will be treated the same as other entries they so characterize.  The same haircut reduction discussed in Section IV.A(9) below will be applied to this category of entries (identified in the reply brief as "Counterclaim B").

5. *Fees Resulting from Allegedly Protracting Litigation*

The Cakebreads argue that Berkeley Millwork unnecessarily caused this litigation to be protracted. Yet the record reflects it was entirely resolved within about one year, with only a brief continuance from the original scheduling order. To the extent the Cakebreads base their charge on Berkeley Millwork's refusal to arbitrate, the arbitration provision in the Sales Order was unenforceable as drafted. In a letter to the parties, the American Arbitration Association stated that it was prohibited, under California law, from administering arbitration in this case because the Sales Order would require a non-prevailing party to pay the fees and costs of the prevailing party. The Cakebreads cite no legal authority in support of their position that refusal to agree to arbitrate when otherwise not required warrants substantial forfeiture of fees.

### 6. *Fees Related to Fees Request*

The Cakebreads object to Berkeley Millwork's request for fees spent on this motion. The Ninth Circuit has repeatedly held that time spent by counsel establishing the right to a fee award is compensable. *See, e.g., D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1387–1388 (9th Cir. 1990). Specifically, when attorney's fees are authorized by contract, courts allow parties to recover the reasonable expenses of preparing the fee application. *See Bruckman v. Parliament Escrow Corp.*, 190 Cal.App.3d 1051, 1062 (1987). The Cakebreads claim that Berkeley Millwork is not entitled to "fees on fees" because their counsel refused to engage in reasonable meet-and-confer, calling to negotiate only a few days before the fee motion was due. The timing, however, was not unreasonable. Berkeley Millwork offered to meet and confer almost one week before the motion was due, which is reasonable given that they only had 14 days from the entry of judgment to file their motion. The Cakebreads claim that counsel for defendant acted unreasonably because they did not share with plaintiffs a copy of their bills before filing this motion. Yet, Berkeley Millwork offered to send the Cakebreads a copy of their motion upon the established filing date if the Cakebreads would stipulate to a one-week extension, an offer which the Cakebreads declined. Moreover, given the nature of the meet-and-confer conversation, as described in the Shaw declaration, and the extent to which the Cakebreads have vociferously opposed the attorney's fees requested, the Cakebreads have not shown that, if Berkeley Millwork had shared their bills before

filing this motion, the parties could have avoided motion practice.

### 7. *Fees for Allegedly Unnecessary Work*

The Cakebreads argue that the fee award should be reduced because Honowitz and Shaw performed duplicative work. In support, they argue that Honowitz and Shaw both billed for attending the case management conference, mediation, client deposition, and summary judgment hearing. In response, Berkeley Millwork offers to remove 1.3 hours for the case management conference from Honowitz's bills and 6.5 hours for the client's deposition from Shaw's bills. (In fact, it appears that Shaw billed 8 hours for attending the client's deposition, so that amount of time will be removed.) That both lawyers participated in the mediation and appeared at the dispositive motion hearing is not unreasonable, so no time will be deducted for those appearances.[4]

### 8. *Fees for Allegedly Clerical Work*

The Cakebreads argue that two line items in Shaw's records amount to "clerical work" which should not be billed. Specifically, they point to Shaw's two entries of 0.2 hours for "Download and review ADR Notice of Non-Compliance from the Court" and "Handle ADR Certification." They offer no support for their conclusion that these tasks are "purely clerical" or that it is inappropriate for an attorney to have performed such tasks. *See, e.g.*, *Wilson v. Astrue*, 2011 WL 4964813 (C.D. Cal. 2011) (finding that entries describing preparing certificate of interested persons and other supporting paperwork did not describe purely clerical work). Accordingly, Shaw's time will not be reduced for performance of such tasks.

### 9. *Fees for Allegedly Vague and Block-Billed Entries*

The Cakebreads argue that some of Honowitz and Shaw's time entries are vaguely described, block-billed, incomprehensibly redacted, and marred by being non-contemporaneous or missing entries for purported conferences. In *Welch v. Metro. Life Ins. Co.*, the Ninth Circuit

---

[4] The Cakebreads further question the reasonableness of some of Shaw and Barnett's entries, but the descriptions provided for those tasks suffice to establish the reasonableness of the fee request.

affirmed a district court's authority to reduce block-billed hours by 10% to 30%. 480 F.3d 942, 948 (9th Cir. 2007); *see also Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 967 (N.D. Cal. 2014) (applying a 20% reduction for block-billing). In *Moreno v. City of Sacramento*, the Ninth Circuit affirmed a district court's authority to "impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation." 534 F.3d 1106, 1112 (9th Cir. 2008). While none of the billing deficiencies here merit the 50% cut that the Cakebreads propose, a small reduction is appropriate. As the Cakebreads note, some of the entries are impermissible vague. For example, many entries refer to telephone calls and emails without describing the substance of the communication. Berkeley Millwork proposes reducing all entries in this category consisting of more than 2.5 hours by 10%. Their logic is that shorter time entries mitigate the problems with block-billing. Yet, many of the short entries identified by the Cakebreads as vague are insufficiently specific. Accordingly, all time entries in this category will be reduced by 10%.

### B. Reasonableness of Rates

Berkeley Millwork seeks fees based on rates of $400 for Mr. Honowitz, $350 for Mr. Shaw and for Mr. Ramsey. The Cakebreads say these rates are unreasonable. Reasonable rates are calculated according to the prevailing market rates in the relevant community, with close attention paid to the fees charged by "lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n. 11, (1984); *Davis v. City and Co. of San Francisco*, 976 F.2d 1536, 1545–1546 (9th Cir. 1992). The "relevant community" is the district in which the lawsuit proceeds. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

The requested rates here are in line with those prevailing in the community for similar services of attorneys of reasonably comparable skill, experience, and reputation. *See Soares v. Lorono*, No. 12-CV-05979-WHO, 2015 WL 1743882, at *2 (N.D. Cal. Apr. 16, 2015) (finding hourly rate of $400 "reasonable in light of the market rates and the fact that counsel has been practicing for over 50 years"); *Calix, Inc. v. Alfa Consult, S.A.*, No. 15-CV-00981-JCS, 2015 WL 3902918, at *5 (N.D. Cal. June 24, 2015) ("As a partner who practiced law for more than 20 years,

Mr. Dranit's rate of $400 per hour was also reasonable."). Berkeley Millwork also seeks fees based on a rate of $150 for Barnett's paralegal services. The Cakebreads' do not argue that this amount is unreasonable and, in any event, it is not, given Barnett's more than 10 years of experience.

C. Reasonableness of Hours

The Cakebreads argue that Berkeley Millwork's hours are excessive under the *Kerr* factors. In support, they argue that this was a "simple" case and note that their own attorney's fees were lower than the fees requested by Berkeley Millwork. As to the complexity of this case, while the subject matter is discrete, it nonetheless entailed multiple dispositive motions and discovery disputes. As to the fee comparison, "the Ninth Circuit has cautioned that 'comparison of the hours spent in particular tasks by the attorney for the party seeking fees and by the attorney for the opposing party [] does not necessarily indicate whether the hours expended by the party seeking fees were excessive." *Dropbox, Inc. v. Thru Inc.*, 2017 U.S. Dist. LEXIS 33325, 13–16 (N.D. Cal. Mar. 8, 2017) (citing *Ferland v. Conrad Credit Corp*., 244 F.3d 1145, 1151 (9th Cir. 2001)). "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

Ultimately, Honowitz and Shaw seek fees for 193 and 251 hours respectively. For a case lasting more than a year, involving cross-motions for summary judgment, discovery disputes, and more than minimal discovery, their request is not unreasonable. The *Kerr* factors do not support a finding of excessive fees here.

## V. CONCLUSION

Berkeley Millwork's further adjusted proposal is adopted in part with the following modifications: (1) hours claimed in the category of "Counterclaim B" will be reduced by 10%; (2) an additional 1.5 hours will be deducted from Shaw's bills to account for the full amount of time entered for attendance at the client's deposition; (3) hours claimed in the category of "Vague Billing" will be reduced by 10% across all entries, not just limited to entries of more than 2.5

hours. Accordingly, Berkeley Millwork is hereby awarded attorney's fees in the amount of $164,260 and costs in the amount of $3,564.04.

**IT IS SO ORDERED**.

Dated: March 29, 2017

_____
RICHARD SEEBORG
United States District Judge